FRED W. BROWN, JR., in Equity, *vs.* ISAAC F. GOULD.

Waldo.    Opinion January 11, 1900.

*Insolvency. Preference. R. S., c. 70, § 52.*

A preference becomes a protected transaction under the insolvent law after the lapse of four months.

The insolvent, of whom the plaintiff is assignee, gave a mortgage to secure a pre-existing debt, the mortgagor being insolvent, as the mortgagee well knew, but the mortgage had been recorded more than four months before the mortgagor filed his petition to be adjudged an insolvent debtor. *Held;* that the mortgage is not in fraud of the statute against preferences.

Neither was it a fraud under the six months clause of the insolvent law, for it was given to secure a bona fide indebtedness and had no elements of fraud.

ON REPORT.

Bill in equity, heard on bill, answer and proofs, to vacate a mortgage given by an insolvent debtor.

The mortgage was made to the defendant, May 16, 1895, by one William Gould, his brother, who filed a petition in insolvency, October 31, 1895. The plaintiff claimed that the second inhibition in R. S., c. 70, § 52, as amended, applied to the case; that the conveyance was in contemplation of insolvency, and with a view to put the property beyond the reach of creditors, and the defendant had reasonable cause to so believe.

*Jos. Williamson,* for plaintiff.

The knowledge by one to whom an insolvent has transferred property, of the business affairs of the latter of his indebtedness, and the like, are facts competent to charge the former with a fraudulent purpose, in a case of this nature. *Strout* v *Redman,* 89 Maine, 435.

The defendant and the insolvent were brothers. Residing fifteen miles apart, they were "back and forth some from each other's houses." Business relations had existed between them. It appears that the mortgage in question was in part for a note for $375, given ten years before, and barred by the statute of limitations. Although giving vitality to a debt of this nature is perfectly right, it seems a little singular that it was done just at that time, when the defendant knew of a large judgment which just before had been recovered against the mortgagor, and that it should have been coupled with a lease of the mortgaged premises, for the alleged reason that the defendant "considered the mortgage as scant security for his claim, and that he was induced to take the lease of said premises to prevent said security from being impaired by the accumulation of interest and taxes". According to the insolvency schedules, his brother then owed $1600, mostly for borrowed money, and except two doubtful accounts of $600, he had no property save what was exempt from attachment; yet the defendant testifies that no suspicion of insolvency occurred to him until he "saw it in the newspaper, in November, 1895", and not even in August, when the insolvent was in jail for debt.

But little reliance can be placed upon the statements of William Gould that he had no reason to believe himself insolvent, his schedules contradict his evidence in that respect.

The evidence of the defendant that he did not believe the debtor insolvent, is clearly inadmissible. If allowed before a jury, it would have been cause for a new trial. *Coburn* v. *Proctor*, 15 Gray, 38.

Testimony of the parties as to their intention is inexpressibly weak, and can rarely avail against the stronger proof which the transaction affords. *Oxford Iron Works* v. *Shafter*, 13 Blackford, 455.

If it appears that the debtor was actually insolvent, and that the means of knowledge upon the subject were at hand, and that such facts and circumstances were known to the creditor as clearly put him on inquiry, he had reasonable cause to believe that the debtor was insolvent.

Knowledge of a trader's inability to pay his debts in the ordin-

ary course of business, derived from his failure to pay the debt due to the creditor himself, is at least sufficient to put him on inquiry as to the debtor's solvency.  *Scammon* v. *Cole*, 3 B. R. 100.

*R. W. Rogers*, for defendant.

The identical question which the complainant here presents, was tried and decided adversely to him in the unreported case between these same parties.—Fred W. Brown, Jr., Assignee, vs. Isaac F. Gould.  That case was an action at law, but, like this, it turned on the question of fraud in the transaction of May 16, 1895.

The rescript in that case, received May 30, 1898, is:  "The evidence does not satisfy the court that the transaction between the plaintiff's assignor in insolvency and the defendant was in contemplation of insolvency, or in fraud of the insolvent law."

William Gould, the insolvent, testifies that he did not contemplate insolvency on May 16, 1895, that he had no intention or thought of going into insolvency until a few days before he filed his petition; that he did not make the conveyance with a view to keeping his property out of the reach of his creditors, or to prevent its going to his assignee in insolvency, or to prevent its being distributed under the insolvent law, or with a view to defeat the object of said law.  This testimony is not only uncontradicted, but is corroborated by his conduct just before and after the transaction.  In March, 1895, he procured one of his brothers to sign with him as surety on a note for $150—to renew a note for a like amount on which there was no surety, or security of any kind; June 8, 1895, he paid twenty-five dollars to another person, thereby renewing a note that had been barred by the statute of limitations for nearly a year; and August 12, 1895, he got his brothers Isaiah and this respondent to sign a note with him, on which he hired $425 to pay a judgment against himself.  These, the respondent claims, are not the acts of a man contemplating insolvency.

The respondent himself testifies, in substance, that he had no suspicion that William was acting in contemplation of insolvency, or was making the mortgage and lease for the purpose set forth in

complainant's bill; and in corroboration of his testimony, points to the fact that on August 12 following, he signed the note for $425.00 as surety for William instead of advising him to get rid of the judgment by proceedings in insolvency. There is no evidence tending to show that he had any knowledge whatever of William's financial condition, or that he had reasonable cause to believe that he was acting in contemplation of insolvency.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

HASKELL, J. One William Gould, on October 1, 1895, filed his petition in insolvency. He had been possessed of a farm, subject to a mortgage given by him in 1876 upon which there was due about $800 on May 16, 1895, when he gave a second mortgage to the defendant to secure a pre-existing debt of $575, and also a lease of the farm for one year at a rental of interest on $1400 "that is on the place and pays the taxes of 1895," reserving the house to live in and the right of keeping two cows and two horses.

This bill is brought by the assignee in insolvency of William against the mortgagee to vacate the $575 mortgage as taken with a view to prevent the property from coming to the plaintiff as assignee in insolvency.

The mortgage was given to secure a pre-existing debt, the mortgagor being insolvent as the mortgagee well knew, but the mortgage had been recorded more than four months before the mortgagor filed his petition to be adjudged an insolvent debtor, and therefore was not in fraud of the statute against preferences.

It is contended, however, that the mortgage was given in fraud of the six months clause of the insolvent law. The mortgage was a preference. For more than four months the creditors slept on their rights and allowed it to become valid as such under the law. To bring it within the six months clause it must be something more than a preference. It must be a fraud. If it merely works a preference it is not a fraud. Had it secured a fictitious debt, it would have appeared to have been a preference, but have been a

fraud.   It secures an actual debt and therefore has no element of dishonesty.   To be sure, it prevents the property from coming to the assignee, but in a legal way.   The defendant was a creditor. He knew of the debtor's embarrassment, but wanted security and took it.   The creditors allowed him to keep it for more than four months and now charge him with fraud in doing so.   The evidence does not sustain the charge.   When he took the mortgage, he also took a lease of the farm for a year, agreeing to pay interest and taxes, but allowing the mortgagor to live there and keep two cows and two horses.   The purpose doubtless was to secure his interest and taxes and leave the debtor meantime a home.   The assignee might have redeemed and got the benefit of any value in the farm above the mortgages, but cannot avoid them as fraudulent, for they are not.

*Bill dismissed with costs.*